# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE MIDDLE DISTRICT OF THE STATE OF FLORIDA
# TAMPA DIVISION

**SOS MOBILE MEDICAL CARE, LLC,** a
Florida Limited Liability Company,

    **Plaintiff,**　　　　　　　　　　　　　　　　Case No.

-vs-

**RODERICK NEAL BENNETT, M.D.,** an
Individual, and **SOS CARE SOLUTIONS, LLC,**
a Florida Limited Liability Company

    **Defendants.**

_____/

## VERIFIED COMPLAINT

COMES NOW, the Plaintiff, SOS Mobile Medical Care, LLC, a Florida Limited Liability Company, by and through their undersigned counsels, and hereby sues the Defendants, Roderick Neal Bennett, M.D., an Individual, and SOS Care Solutions, LLC, a Florida Limited Liability Company upon the grounds set forth herein below:

### SHORT SUMMARY

1. The Plaintiff, SOS Mobile Medical Care, LLC (hereinafter "SMMC"), is a Florida based business founded in 2020 which offers in-home healthcare visits to patients, and offers mobile or in-home medical care that ranges from: acute, urgent, primary, emergency, hospital at home, post acute, palliative, end of life, and other medical services.

2. SMMC contracts with a number of health groups, including hospice groups, to provide medical services to the groups' respective patients.

3. On April 21st, 2022, Defendant Roderick Neal Bennett, M.D., entered into a Medical Director Agreement (attached hereto as **Exhibit A**, hereinafter the "MDA") with the Plaintiff for the purpose of Defendant Bennett acting as the Medical Director of SMMC.

4. As part of his contractual relationship with SMMC, Defendant Bennett was bound to a number of Restrictive Covenants set out in Paragraph 12 of the MDA.

5. In pertinent part Defendant Bennett that SMMC would provide him with "documents, records and other information of a confidential, proprietary and sensitive nature" related to his performance under the terms of the MDA, to include "Company financial information, and the current business opportunities," and that Defendant Bennett "shall not, under any circumstance, disclose, communicate, or divulge to, or use Company's confidential and proprietary information for the benefit of, including without limitation, any supplier, competitor or potential competitor of [SMMC]." See **Exhibit A**, Paragraph 12(a).

6. The Plaintiff disclosed confidential information to Defendant Bennett, including financial and business information pertaining to its relationships with current customers within the State of Florida and prospective customers outside of Florida, including but not limited to, those in Colorado, Alabama, and Georgia. See **Exhibit B**, Secretary of State registrations for SMMC.

7. Client lists which are not public and are acquired or compiled through the industry of the owner, as well as the financial information pertaining to those clients, qualifies as

a trade secret. See *Ventures vs. Casey*, 2018 U.S. Dist. LEXIS 248971 at 2-3 (S.D. Fla. 2018) citing *SMS Audio LLC vs. Belson*, 2016 U.S. Dist. LEXIS 195790 at 9-10 (S.D. Fla. 2016); see also *Bridge Fin., Inc. vs. Fischer & Assoc.s*, 310 So.3d 45, 48 (Fla. 4th DCA 2020), citing *E. Colonial Refuse Serv., Inc. vs. Velocci*, 416 So.2d 1276, 1278 (Fla. 5th DCA 1982).

8. Likewise, financial details of contractual relationships with customers are both secret and of advantage to SMMC, or provide an opportunity for SMMC to obtain an advantage over those who do not know such information, and are therefore considered trade secrets as defined in 18 U.S.C. §1836, as well as in Florida Statute §688.002(4), and Florida Statute §812.081.

9. In the event that Defendant Bennett breached his obligations to keep SMMC's confidential information confidential, he agreed that the Plaintiff would be entitled to injunctive and equitable relief. **Exhibit A**, Paragraph 12(b).

10. Furthermore, Defendant Bennett was provided with access to the medical information of SMMC's customer's patients, including a large number of those patients whom Defendant Bennett was not directly rendering medical services. This category of information is referred to herein as "Patient Medical Information."

11. The Patient Medical Information contained individually identifiable health information records, such as information related to past, present, or future physical or mental health or condition of the patients, and their prospective care and treatments.

12. The Patient Medical Information qualifies as Confidential Information under the MDA's Confidential Information provisions (**Attachment 1, ¶12**) as it includes

"documents, records and other information of a confidential, proprietary and sensitive nature related to Professional Services pursuant to [the MDA]."

13. Defendant Bennett was obligated to "immediately return all Confidential Information including copies, summaries or other documents containing any of the Confidential Information, regardless of format." See **Exhibit A, ¶12(a).**

14. Since April 21st, 2022, SMMC obtained a number of service contracts and advantageous business relationships with healthcare groups in Florida and other states to which Defendant Bennett was privy as part of the MDA.

15. Many of these business relationships resulted in contracts, which in turn generated revenue for SMMC through its regular line of work.

16. Other relationships with potential customers outside of the State of Florida were developed as recently as October of 2025.

17. Upon information and belief, it appears that since at least April, 2025, the Defendant utilized SMMC's trade secret information, namely the Plaintiff's business relationships, client list and information, prospective client list and information, as well as proprietary customer financial information (including contract prices and SMMC's costs to provide services), to divert and steal the SMMC's clients.

18. In furtherance of this, Defendant Bennett utilized a heretofore unknown business entity named SOS Care Solutions, LLC (a Florida Limited Liability Company and co-defendant in this matter), founded by him approximately eight months after he executed the MDA. See **Exhibit C**, Florida Division of Corporations Records.

19. To the Plaintiff's knowledge and belief, Defendant SOS Care Solutions, LLC (hereinafter "SCS") covertly began operations in June, 2025 (though potentially earlier), and operates as a direct competitor to SMMC.

20. The Plaintiff was unaware of Defendant Bennett's activities, or SCS's existence as a competitor until late November, 2025.

21. By the summer of 2025, the Defendants, SCS and Bennett, were converting potential customers from SMMC to Defendant SCS through the use of proposals that deceptively substituted SMMC for SCS in order to convert the relationship from the Plaintiff to that of Defendant SCS. See **Exhibit D**.

22. Since at least October of 2025, the Defendants covertly worked to convert the Plaintiff's existing customers from SMMC service contracts to those of SCS. Examples of such conversions include the healthcare groups Affinity Health, Vitas, and Chapters Health. See **Exhibit E** (a contract with a computer document recovered by the Plaintiff and named "affinity contract") and **Exhibit F** attached hereto.

23. Some of these conversions were done even without the client's knowledge, such as Accent Care, who became aware of the Defendants' machinations only as a result of the Defendant's change of the W9 information. See **Exhibit G**.

24. Other conversions were done by directly contacting the Plaintiff's customers and soliciting their business. See **Exhibit F**, Chapters Health.

25. Defendants SCS and Bennett have pilfered potentially more than seventy-five percent (75%) of the Plaintiff's customers (by gross revenue) using Defendant Bennett's access to the Plaintiff's Confidential Information.

26. Specifically, the Defendants utilized the Plaintiff's existing contract financial information, as well as the customer and potential customer lists to build their business, SCS.

27. As of the date of this Complaint, the Defendant is actively contacting the Plaintiff's customers and seeking to interfere in the Plaintiff's advantageous business relationships by lying, deceiving, and inducing the customers to enter into new service agreements with an unknown third-party business or joint venture between Defendant Bennett and unknown third parties.

28. Defendant Bennett, acting within the scope of his employment with the Plaintiff and within the contractual relationships between the Plaintiff and the healthcare groups with whom it worked, continued to see patients during the summer and fall of 2025.

29. Defendant Bennett rendered services to these patients of the Plaintiff's customers, resulting in compensation being due and owing to the Plaintiff by the patients.

30. However, upon information and belief, Defendant Bennett redirected payments (due to the Plaintiff) to his own business, Defendant SCS.

31. The Plaintiff did not give authority or permission to either Defendant Bennett or Defendant SCS to receive those payments.

## JURISDICTION & VENUE

32. This Court has subject matter jurisdiction over the causes of action herein pursuant to 18 U.S.C. §1836(c), 28 U.S.C. §1331, and 28 U.S.C. §1367.

33. Likewise, venue is appropriate in the Middle District of Florida pursuant to 28 U.S.C. §1391(b), both as the result of consent (**Exhibit A** at ¶12(c)) and because the causes of action at issue accrued in this District.

## PARTIES

34. The Plaintiff, SOS MOBILE MEDICAL CARE, LLC, is a Florida Limited Liability Company with a principal address of 8270 Woodland Center Blvd., Tampa, Florida 33614.

35. The Defendant, RODERICK NEAL BENNETT, is a Medical Doctor and a resident of Charlotte County, State of Florida.

36. The Defendant, SOS CARE SOLUTIONS, LLC, is a Florida Limited Liability Company with a principal address that also purports to be 7830 Gunn Highway, Tampa, Florida 33626.

### Count I: Breach of Contract, Injunctive Relief
*Defendant Bennett*

37. The Plaintiff re-avers the allegations above as though fully set forth herein.

38. The Plaintiff and Defendant Bennett entered into a valid contract (**Exhibit A**, the MDA) to govern their relationship.

39. Defendant Bennett, as a part of his obligations and responsibilities, was required to keep secret the Plaintiff's confidential and proprietary information as described in Paragraph 12(a) of the MDA.

40. The MDA states that Defendant Bennett "shall not, under any circumstances… use [SMMC's] confidential and proprietary information for the benefit of… any supplier, competitor or potential competitor of the Company." **Exhibit A, ¶12(a).**

41. Furthermore, Defendant Bennett was prohibited from disclosing the Confidential Information to any third party, including any competitor or potential competitor of the Plaintiff. **Exhibit A**, ¶12(a).

42. Defendant Bennett disclosed the Plaintiff's Confidential Information to a third-party competitor of SMMC, to which he has an ownership interest.

43. Defendant Bennett used the Plaintiff's confidential and proprietary information for the purposes of creating a competitor, or potential competitor of the Plaintiff.

44. Such actions materially breached Defendant Bennett's obligations under Paragraph 12(a) of the MDA. **Exhibit A**.

45. The Plaintiff has been harmed by Defendant Bennett's actions, as his unauthorized use of the Plaintiff's confidential and proprietary information for his own benefit, and that of his new company (co-Defendant SCS), has resulted in, amongst other damages, lost customer goodwill, customer relationships, and proprietary financial information of the Plaintiff.

46. His continued use & disclosure of this information has and will continue to render irreparable harm to the Plaintiff, absent relief from the Court.

47. As part of the MDA, Defendant Bennett agreed that his breach of Paragraph 12(a) would amount to irreparable harm, and warrant the issuance of injunctive and equitable relief by this Court. See **Exhibit A**, Paragraph 12(b).

48. Furthermore, the Defendant agreed that irreparable harm would be "irrebuttably presumed" in any action brought to enforce Defendant Bennett's agreement. *Id*.

49. As such, irreparable harm has occurred to the Plaintiff, and continues to occur absent Court intervention.

50. The Plaintiff asks that the Court enter a permanent injunction against Defendant Bennett, prohibiting him, his agents, representatives, members of any company which he now controls, or any third party over which Defendant Bennett has control, from

contacting any person, agent, representative, partnership, or company that was or is the Plaintiff's customer, and which was disclosed to Defendant Bennett through his activities with the Plaintiff under the MDA.

51. In addition to the information pertaining to the Plaintiff's customers and prospective customers, Defendant Bennett was also entrusted with medical records for the patients associated with each of the Plaintiff's customers, referred to herein above as PMI.

52. The Defendant was obligated to return all PMI after his resignation took effect on December 5th, 2025.  See **Exhibit A**, ¶12(b).

53. Defendant Bennett has failed to return the patients' PMI to the Plaintiff as required by the MDA.

54. Paragraph 13(b) of the MDA restricted Defendant Bennett from attempting to enter into contracts, commitments, or agreements of any kind in the name of the Plaintiff.

55. The Defendant specifically attempted to enter into contracts, commitments, and agreements in the name of the Plaintiff, in material violation of the terms of his MDA.

56. Furthermore, the Defendant attempted to convert the Plaintiff's name, reputation, and information to his own through the creation of Defendant SCS, so that he could enter into such contracts, commitments, and agreements in the Plaintiff's name.

57. Paragraph 14(a) required Defendant Bennett to cease and discontinue the use of the Plaintiff's logo and likenesses upon termination of the MDA, which took effect on December 5th, 2025.

58. The Defendant has failed to cease utilizing the Plaintiff's logo and likenesses, instead using them as his own for purposes of marketing and conducting business separate and apart from the Plaintiff.

59. Such action amounts to a material breach of the MDA.

60. The Defendant was obligated to provide patient records to the Plaintiff after his resignation took effect pursuant to Paragraph 14(c) of the MDA.

61. The Defendant has failed to provide such records after the Plaintiff requested them.

62. Such failure amounts to a material breach of the MDA.

63. Furthermore, the Plaintiff has incurred attorney's fees and court costs associated with bringing this action.

64. Pursuant to Paragraph 18 of the MDA, the Plaintiff is entitled to an award of its fees and costs associated with the parties' dispute.

**WHEREFORE**, the Plaintiff, SOS Mobile Medical Care, LLC, respectfully requests this Honorable Court to enter Judgment against Defendant Roderick N. Bennett, M.D., enter an injunction prohibiting him, his agents, representatives, businesses, and third parties over whom he has control, from disclosing or utilizing the Plaintiff's confidential and proprietary information, requiring him to return all Patient Medical Information, and awarding the Plaintiff its attorney's fees and costs incurred in bringing this action. The Plaintiff further requests any additional equitable relief as may be necessary and proper to do justice between the parties.

### Count II: Misappropriation of Trade Secrets
*Protection of Trade Secrets Act*
*18 U.S. Code Chapter 90 Part I*
*Defendants Bennett and SCS*

65. The Plaintiff re-avers the allegations set forth in paragraphs 1-36 as though fully alleged herein.

66. The Plaintiff's Confidential Information, including but not limited to customer and prospective customer information (including service needs, financial information,

contract terms, etc.), advertising and marketing strategies specifically developed for those individual customers and prospective customers, contractual terms and financial details for existing and prospective contracts with those customers and prospective customers, information pertaining to proposals made to current and prospective customers, and other valuable information pertaining to the Plaintiff's operations qualify as trade secrets.

67. The Confidential Information includes a compilation of financial, economic, and business information pertaining to the Plaintiff, its customers, and its prospective customers.

68. Furthermore, the Plaintiff's Confidential Information which qualify as trade secrets were utilized in the Plaintiff's services to customers and their patients that were located in multiple states.

69. These trade secrets were not generally known or readily accessible from any source.

70. The Defendants were unaware of the Plaintiff's trade secrets but for Defendant Bennett's association with the Plaintiff through the MDA.

71. The Plaintiff's trade secrets are economically valuable as they contain advantageous information that can be and is utilized in the negotiation of service agreements, including but not limited to: specific customer needs, customer interests, detailed pricing, and overhead costs associated with performing the services needed by the current and prospective customers.

72. The Plaintiff took reasonable steps to protect this trade secret information from disclosure, including but not limited to the use of non-disclosure agreements and

restrictive covenants designed to protect the Confidential Information from unauthorized disclosure.

73. One such step taken to protect the Plaintiff's Confidential Information trade secrets included the Restrictive Covenants in Defendant Bennett's MDA, located in ¶12.

74. Defendant Bennett agreed that the Plaintiff's Confidential Information constituted a trade secret, as outlined in Paragraph 12(a) of the MDA:

> "Such Confidential Information shall constitute the trade secrets of [SMMC], and Dr. Bennett agrees that he is prohibited from disclosing such Confidential Information to any third party." **Exhibit A**.

75. Defendant Bennett improperly appropriated the Plaintiff's Confidential Information in violation of the terms of his MDA, making copies of such information for himself and otherwise converting the Plaintiff's information to his own uses, including those with Defendant SCS.

76. Defendant SCS, who is in possession of and currently utilizing the Plaintiff's Confidential Information, knew or should have known that the Plaintiff's trade secret information came to it through improper means by way of Defendant Bennett's breaches of the MDA's Restrictive Covenants.

77. Both Defendant Bennett and Defendant SCS used and continue to use the Plaintiff's trade secrets.

78. Defendant Bennett breached his contractual duties to keep the trade secrets from disclosure.

79. Defendant Bennett's actions in disclosing the Plaintiff's trade secrets were willful and malicious, as is evidenced by the timing of his establishment of Defendant SCS and his

gradual conversion of the Plaintiff's customers as a result of his disclosure and use of the Plaintiff's trade secrets.

80. The Plaintiff has been damaged as a result of Defendant Bennett's actions.

81. Conversely, Defendant Bennett and Defendant SCS have been unjustly enriched as a result of Defendant Bennett's disclosure of the Plaintiff's trade secrets.

82. The Plaintiffs request an injunction issued by this Court under 18 U.S.C. §1836(b)(3)(A) to prevent the continued misappropriation of the Plaintiff's trade secrets.

83. The Plaintiffs also request this Court to award it damages for the actual loss caused by Defendant Bennett's activities, as well as damages for unjust enrichment to the Defendants (both Bennett and SCS) for the use of the Plaintiff's trade secrets.

84. The Court can, and should, double such amount of damage awarded under 18 U.S.C. §1836(b)(3)(B).

85. Pursuant to Paragraph 18 of the MDA, the Plaintiff is entitled to an award of its fees and costs associated with the parties' dispute.

**WHEREFORE**, the Plaintiff, SOS Mobile Medical Care, LLC, respectfully requests this Honorable Court to enter Judgment against Defendants Roderick N. Bennett, and SOS Care Solutions, LLC, and Order: (1) injunctive relief preventing the Defendants from continued use of the Plaintiff's trade secrets; (2) awarding actual damages caused by the Defendant's misappropriation of the Plaintiff's trade secrets; (3) awarding damages caused by any unjust enrichment that resulted from the use of the Plaintiff's trade secrets by the Defendants; and (4) doubling such awards as a result of Defendant Bennett's willful and malicious misappropriations, as well as such further relief as may be appropriate under the statute.

## Count III: Misappropriation under the Florida Uniform Trade Secrets Act
*Florida Uniform Trade Secrets Act*
*Florida Statutes Chapter 688*
*Defendants Bennett and SCS*

86. The Plaintiff re-avers the allegations set forth in paragraphs 1-36 as though fully alleged herein.

87. The Plaintiff's Confidential Information, including but not limited to customer and prospective customer information (including service needs, financial information, contract terms, etc.), advertising and marketing strategies specifically developed for those individual customers and prospective customers, contractual terms and financial details for existing and prospective contracts with those customers and prospective customers, information pertaining to proposals made to current and prospective customers, and other valuable information pertaining to the Plaintiff's operations qualify as trade secrets.

88. The information compilations that the Plaintiff contends are trade secrets includes a compilation of financial, economic, and business information pertaining to the Plaintiff, its customers, and its prospective customers.

89. These trade secrets were not generally known or readily accessible from any source.

90. The Defendants were unaware of the Plaintiff's trade secrets but for Defendant Bennett's association with the Plaintiff through the MDA.

91. The Plaintiff's trade secrets are economically valuable as they contain advantageous information that can be and is utilized in the negotiation of medical service agreements, including but not limited to: specific customer needs, customer interests, detailed pricing, and overhead costs associated with performing the services needed by the current and prospective customers.

92. The Plaintiff took reasonable steps to protect this trade secret information from disclosure, including but not limited to the use of non-disclosure agreements and restrictive covenants designed to protect the Confidential Information from unauthorized disclosure.

93. One such step taken to protect the Plaintiff's trade secrets included the Restrictive Covenants in Defendant Bennett's MDA, located in ¶12. See **Exhibit A**.

94. Defendant Bennett disclosed the Plaintiff's trade secrets, and utilized them without authorization in violation of the Restrictive Covenants contained within the MDA at ¶12. See **Exhibit A**.

95. Such disclosures and utilization of the Plaintiff's trade secrets amount to a breach of Defendant Bennett's duty to maintain secrecy of the Plaintiff's trade secrets.

96. Defendant SCS, who is in possession of and currently utilizing the Plaintiff's Confidential Information, knew or should have known that the Plaintiff's trade secret information came to it through improper means by way of Defendant Bennett's breaches of the MDA's Restrictive Covenants.

97. Both Defendant Bennett and Defendant SCS used and continue to use the Plaintiff's trade secrets.

98. Defendant Bennett breached his contractual duties to keep the trade secrets from disclosure.

99. Defendant Bennett's actions in disclosing the Plaintiff's trade secrets were willful and malicious, as is evidenced by the timing of his establishment of Defendant SCS and his gradual conversion of the Plaintiff's customers as a result of his disclosure and use of the Plaintiff's trade secrets.

100. The Plaintiff has been damaged by Defendant Bennett's disclosure of its trade secrets, and by Defendant SCS's unauthorized use of such trade secrets.

101. The Plaintiff is entitled to, and the Court should award, injunctive relief against both Defendant Bennett and Defendant SCS from utilizing the Plaintiff's trade secrets in the future, and prohibiting them from contacting or servicing those of the Plaintiff's customers whom the Defendants learned of and obtained contractual relationships with through the use of the Plaintiff's trade secrets.

102. The Plaintiff should also be awarded its damages resulting from Defendant Bennett's misappropriation, including actual losses and the unjust enrichment caused by the appropriation.

103. The Court should also double such an award as it is permitted to do under Florida Statute §688.004, as the Defendants' actions were willful and malicious.

104. Pursuant to Paragraph 18 of the MDA, the Plaintiff is entitled to an award of its fees and costs associated with the parties' dispute.

**WHEREFORE**, the Plaintiff, SOS Mobile Medical Care, LLC, respectfully requests this Honorable Court to enter Judgment against Defendants Roderick N. Bennett, and SOS Care Solutions, LLC, and Order: (1) injunctive relief preventing the Defendants from continued use of the Plaintiff's trade secrets; (2) awarding actual damages caused by the Defendant's misappropriation of the Plaintiff's trade secrets; (3) awarding damages caused by any unjust enrichment that resulted from the use of the Plaintiff's trade secrets by the Defendants; and (4) doubling such awards as a result of Defendant Bennett's willful and malicious misappropriations, as well as such further relief as may be appropriate under the statute.

### Count IV: Tortious Interference with Business Relationships
*Defendants Bennett and SCS*

105. The Plaintiff re-avers the allegations set forth in paragraphs 1-36 as though fully alleged herein.

106. The Plaintiff had a number of valid and enforceable contracts with its customers.

107. The Plaintiff also had a number of valuable business relationships with its current customers and prospective customers.

108. The Defendants were made aware of these contractual and business relationships.

109. Defendant Bennett became aware of these business relationships, and the terms of the contracts and proposals, through his employment as the Plaintiff's Medical Director, subject to the MDA attached hereto as **Exhibit A**.

110. Defendant SCS became aware of these relationships and contracts after the unauthorized disclosure of such relationships by Defendant Bennett.

111. The Defendants acted to intentionally and unjustifiably cause the Plaintiff's customers to breach their existing contractual obligations with the Plaintiff in favor of obtaining new advantageous contractual relationships with the Defendants.

112. The Defendants also damages the Plaintiff's advantageous business relationships with those customers and prospective customers by spreading false information about the Plaintiff.

113. Similarly, the Defendants engaged in a series of activities designed to create confusion regarding their identity, in an effort to further spread false information about the Plaintiff and undermine contractual and business relationships.

114. The Plaintiff's customers (undisclosed in this pleading as a result of their confidential identities), breached their contracts with the Plaintiff as the result of the

Defendants' actions, and terminated their continued business relationships with the Plaintiff.

115. The Plaintiff has been damaged as a result of the Defendants' unjustified interference with their contractual relationships with their customers.

116. Specifically, the Plaintiff's have lost the actual financial value of those contracts and customer relationships.

**WHEREFORE**, the Plaintiff, SOS Mobile Medical Care, LLC, respectfully requests this Honorable Court to enter Judgment against the Defendants, Roderick Bennett and SOS Care Solutions, LLC, and award the Plaintiff its damages resulting from their tortious interference with the Plaintiff's contractual and business relationships with its customers, and for such other relief as may be equitable under the circumstances.

**Dated: December 30th 2025**

/s/Andrew Z. Tapp
Andrew Z. Tapp, Esq.
Florida Bar No. 68002
Metropolitan Law Group, PLLC
1973 W. Lumsden Road, Suite 326
Brandon, Florida 33647
(813) 228-0658
Service@Metropolitan.Law
Andrew@Metropolitan.Law
Counsel for Plaintiff

/s/ Aaron Roberson
Aaron C. Roberson, Esq.
Florida Bar No. 1018139
Roberson & Roberson, P.A.
16057 Tampa Palms Blvd W, Ste 231
Tampa, Florida 33647
(813)-808-3688
Aaron@RobersonPA.com
Counsel for the Plaintiff

## VERIFICATION

I, JOSHUA KOLANKO, Chief Executive Officer of SOS Mobile Medical Care, LLC, verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed On:** 12/30/2025

Signed by:

*Joshua Kolanko*

Joshua Kolanko
CEO, SOS Mobile Medical Care LLC